IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRISHA S. DIXON | § | |
|           Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-02876 |
| | § | |
| UNIVERSAL AMERICAN; CAREMARK | § | JURY DEMANDED |
| ULYSSES HOLDING CORP., and | § | |
| WELLCARE HEALTH PLANS, INC. | § | |
|           Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

COMES NOW Plaintiff, Trisha S. Dixon ("Dixon") files this Original Complaint against Defendants Universal American, Caremark Ulysses Holding Corp., and WellCare Health Plans, Inc. (collectively "Universal"), and shows the Court as follows:

## A. PARTIES AND SERVICE

1. Plaintiff, Trisha S. Dixon is an individual who resides in Harris County, Texas.

2. Defendant Universal American is a New York company and may be served by delivering a copy of the summons and complaint to its registered agent CT Corporation System, 111 Eighth Avenue, New York, New York, 10011.

3. Defendant Caremark Ulysses Holding Corp., is a New York company and may be served by delivering a copy of the summons and complaint to its registered agent CT Corporation System, 111 Eighth Avenue, New York, New York, 10011.

4. Defendant WellCare Health Plans, Inc., is a Florida corporation and may be served by delivering a copy of the summons and complaint to its registered agent CT Corporation System, 1200 South Pine Island Road, Plantation FL 33324.

**B. JURISDICTION & VENUE**

5. The Court has subject matter jurisdiction over this case based on federal question jurisdiction. There is federal question jurisdiction because Dixon bases claims on federal laws, specifically the ADA and Title VII of the Civil Rights Act of 1964.

6. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Dixon's claims occurred in this district, the unlawful employment practices alleged in this case occurred in this district, and there are employment records relevant to Dixon's claims maintained and administered by Universal in this district. 28 U.S.C. § 1391(b); 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(f)(3).

**C. FACTUAL BACKGROUND AND
DIXON'S WRONGFUL TERMINATION**

7. All the facts and assertions herein are based on information and belief.

8. Dixon worked for Universal from June of 2005 until February of 2017.

9. During her employment with Universal, Dixon always received satisfactory or above-satisfactory reviews during her evaluations.

10. During her entire employment, Universal was aware of Dixon's hearing loss and anxiety disorder.

11. In July 2015, Karen Holt, a vice president for Universal, became Dixon's director.

12. Immediately after Holt was appointed director, Dixon noticed that Holt and Rhonda Gage treated older employees in a hostile and harassing manner. This included Dixon, Lori Koepsel, Carolyn Williams and others.

13. On March 16, 2016, Dixon met with Erin Page, a Universal officer. In this meeting, Dixon discussed Holt's mistreatment of older employees.

14. Holt found out about the meeting between Dixon and Page and began retaliating

against Dixon. Holt ostracized Dixon from communications and meetings, removed her from major projects such as participation in the creation of Next Generation ACOs, and punished her for infractions that were not committed.

15. On July 15, 2016, Dixon met with Paul Jernigan, Vice President for Legal Affairs and Chief Medicare Counsel. During this meeting, Dixon expressed her frustrations with Holt's treatment of Dixon and other older employees. Jernigan told Dixon it was time to find a new job. Jernigan then told Holt about the meeting.

16. As a result, on July 22, 2016, for the first time in her tenure with Universal, Holt placed Dixon on a 90-day corrective action plan ("CAP"). Holt used this CAP to retaliate against Dixon's complaints to Page and Jernigan. Holt provided no reason for the CAP and instead made vague remarks about goals and objectives. Holt neither provided feedback to Dixon during the CAP period nor gave any formal resolution or follow up after 90 days.

17. During this period, Dixon began suffering with severe stress because of Holt's actions. Holt and Universal exacerbated Dixon's anxiety disorder by retaliating against Dixon.

18. Dixon visited her doctor and was told she needed to take a stress management class. When Holt learned about the stress management class, Dixon scheduled after-hours meetings with Dixon and Gage that conflicted with Dixon's stress management class. Dixon asked that the meeting be rescheduled so that she could attend the stress management class. In response, HR sent Dixon a letter demanding Dixon provide Universal a full medical release and medical records, so she could "safely fulfill the essential duties" of her job.

19. On November 30, 2016, despite no discussion or resolution of the July CAP, Holt placed Dixon on a 60-day final CAP. Holt used this second CAP to further retaliate against and harass Dixon for her previous complaints. After the second CAP, Dixon was terminated without

explanation.

20. Holt never provided Dixon any feedback or resolution of the CAPs, despite repeated requests from Dixon. Instead, when Holt would talk to Dixon, Holt would look away from Dixon or talk in a low voice. Holt knew of Dixon's hearing loss and used it to prevent Dixon from understanding Holt's instructions and explanations. When Dixon asked Holt to look at her when Holt spoke so that Dixon could understand what she was say, Holt refused and said she would never give Dixon her attention by looking at her.

### D. AGE DISCRIMINATION AND RETALIATION

21. Plaintiff incorporates paragraphs 7-20 herein by reference as if set forth in full.

22. Universal discriminated against Dixon in the terms and conditions of employment based upon her age by treating her in a manner inconsistent with younger employees, punishing her for no reason, and then terminating her employment – as set forth above.

23. Universal's conduct constitutes age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq*. Dixon complied with all administrative prerequisites to filing suit by filing a Charge of Discrimination and receiving a right to sue letter from the Equal Employment Opportunity Commission. Dixon was an employee within the meaning of Title VII and the Texas Labor Code and belongs to a class protected under the statute, namely Dixon was discriminated against because of age or on the basis of age under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e-2(a)(1); the Age Discrimination in Employment Act ("ADEA"); and §21.001, et seq., Labor Code, Vernon's Texas Codes Annotated

24. Dixon clearly engaged in protected activity when she complained of age discrimination at Universal. The plain language of ADEA section 623(d) prohibits an employer

from retaliating against an employee because "such individual" has opposed a practice prohibited by the ADEA or has participated "in any manner" in a proceeding under the ADEA. This section permits third parties to sue under § 623(d) if they have engaged in the enumerated conduct, even if the conduct was on behalf of another employee's claim of discrimination. *See Jones v. Flagship Intern.*, 793 F.2d 714, 727 (5th Cir. 1986). This is so because "employee opposition to discriminatory employment practices directed against a fellow employee may constitute activity protected under § 704(a) [the anti-retaliation provision of Title VII]." *Jones*, 793 F.2d at 727; *see also Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226 (5th Cir. 1996).

25. Based on the facts, Dixon alleges Universal violated the Age Discrimination in Employment Act, as amended and Title VII of the Civil Rights Act, as amended based on her age. The above-described actions of Universal were so outrageous in character and so extreme in degree that they exceeded all possible bounds of decency and can only be regarded as atrocious and utterly intolerable in a civilized community.

26. As a proximate result of Universal's conduct, Dixon suffered damages more than the minimum jurisdictional requirements of this Court. In addition, Dixon was required to retain an attorney to represent him in connection with pursuing her statutory rights. Universal's conduct was intentional and willful and merits the imposition of punitive damages.

### E. DISABILITY DISCRIMINATION

27. Dixon incorporates paragraphs 7-20 herein by reference as if set forth in full.

28. Universal discriminated against Dixon in the terms and conditions of employment based upon her disability by refusing to provide her reasonable accommodations and by terminating her employment.

29. Universal's conduct constitutes age and disability discrimination in violation of

the Americans with Disabilities Act, 42 U.S. C.§12101 *et seq*. Dixon complied with all administrative prerequisites to filing suit by filing a Charge of Discrimination and receiving a right to sue letter from the Equal Employment Opportunity Commission. Plaintiff's Original Complaint was filed within ninety (90) days of receipt of such right to sue letter.

30. As a proximate result of Universal's conduct, Dixon suffered damages more than the minimum jurisdictional requirements of this Court. Dixon was required to retain an attorney to represent her in connection with pursuing her statutory rights. Universal's conduct was intentional and willful and merits the imposition of punitive damages.

## F. ADA / TEXAS LABOR CODE CLAIMS

31. Universal's termination of Dixon also violated the ADA, as amended January 1, 2009, and the Texas Labor Code, as amended September 1, 2009. *See, e.g., Carmona v. Southwest Airlines Co.*, 604 F.3d 848 (5th Cir. 2010) (affirming a jury verdict against Southwest Airlines in a similar disability discrimination case even under the pre-amendment ADA). As the *Carmona* case sets out, there are three elements of an ADA/Texas Labor Code disability discrimination claim. *Id*. at 854. Specifically, the Plaintiff must have a disability, he or she must be a qualified individual for the position (meaning he or she can perform the position's essential functions with or without reasonable accommodation), and he or she must demonstrate that their disability was a motivating factor in their termination. *Id*. Dixon fulfills all three elements.

32. Dixon suffers from a known disability – hearing loss and anxiety disorder. Under 42 U.S.C. §12102 (1) a disability is a "physical or mental impairment that substantially limits one or more major life activities of [an] individual." Under 42 U.S.C. §12102 (2) (B), major life activities include the operation of a major bodily function, including but not limited to fatigue, coughing, hemoptysis, chest pain as well as other symptoms. Hearing loss and anxiety disorder

requires monitoring and treatment, including medical visits. Hearing loss and anxiety disorder substantially limits the operation of Dixon's ability to hear.

33. Dixon was qualified for her job. Universal acknowledged this by allowing her to work for years. Her disability was a motivating reason for her termination. *See Carmona*, 604 F.3d at 855-63 (concluding plaintiff satisfied all three elements of an ADA claim). Universal did not like the fact that Dixon had work related limitations related to her disabilities, and Universal was looking for a reason to fire her. Universal did not let the FMLA stand in their way.

34. Under the ADA/Texas Labor Code, a plaintiff may recover compensatory and punitive damages of up to $300,000.00. *See, e.g., Giles v. General Electric Co.*, 245 F.3d 474, 489 (5th Cir. 2001) (awarding $150,000.00 compensatory damages award in ADA case); *E.E.O.C v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 733-34 (5th Cir. 2007) (upholding $300,000.00 punitive damages award in an ADA case). Back and front pay awards can also be significant. *See Giles*, 245 F.3d at 490 (upholding front-pay award of $141,110.00). Attorneys' fees are also recoverable. *Id.* at 490-91 (upholding fee award of $150,837.00 even where the plaintiff's lawyers took no depositions and made no court appearances prior to trial).

35. Dixon is entitled to recover compensatory damages because she suffered emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life as a result of Universal's violation of the ADA and Texas Labor Code.

36. Dixon's right to recovery of liquidated damages as provided for under the FMLA does not prevent her from recovering punitive damages under the ADA/Texas Labor Code. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 960 (10th Cir. 2002) (employee's recovery of liquidated damages as provided for under FMLA did not prevent her from recovering punitive damages under ADA); *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1152 (10th

Cir.1999) (awarding liquidated damages under the FMLA and punitive damages under Title VII, and expressly rejecting the argument that they represent a double recovery).

37. Dixon is entitled to recover punitive damages because Universal acted with malice or with reckless indifference to the federally protected rights of Dixon.

38. Dixon fulfilled all necessary conditions to suit and received a right to sue letter from the EEOC.

### F. JURY DEMAND

39. Dixon demands a jury trial.

### G. PRAYER

40. Dixon asks that the Court issue citation for Defendants to appear and answer, and that Dixon be awarded a judgment against Defendant for the following:

    a. Actual damages including by not limited to pecuniary losses, non-pecuniary losses, back-pay, front-pay (or reinstatement), and compensatory damages (the latter under the ADA / Texas Labor Code);

    b. Liquidated damages under the FMLA.

    c. Punitive damages under the ADA / Texas Labor Code.

    d. Prejudgment and postjudgment interest;

    e. Court costs;

    f. Attorneys' fees; and

    g. All other relief to which Plaintiff is entitled.

Respectfully Submitted,

By:   */s/ Daniel R. Dutko*
     SBN: 24054206
     Fed ID: 753525
14201 Memorial Dr.
Houston, TX 77079
Telephone: 713/522-9444
Telefax: 713/524-2580
E-Mail: ddutko@hanszenlaporte.com
**Attorney-in-Charge for Plaintiff**

**OF COUNSEL FOR PLAINTIFF:**
HANSZEN LAPORTE, LLP
14201 Memorial Dr.
Houston, Texas 77079
(713) 522-9444 phone
(713) 524-2580 fax